JONATHAN W. THAMES (SBN 242158)
Email: jonathan.thames@kennedyslaw.com
FORREST BOOTH (SBN 074166)
Email:  forrest.booth@kennedyslaw.com
ANNA GOURGIOTOPOULOU (SBN 304998)
Email:  anna.gourgio@kennedyslaw.com
KENNEDYS CMK LLP
101 California St., Suite 1225
San Francisco, CA 94111
T: (415) 323-4460
F: (415) 323-4445

Attorneys for
ROANOKE INSURANCE GROUP, INC.;
W.E. COX CLAIMS GROUP (USA) LLC

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Application of ROANOKE INSURANCE GROUP, INC.; W.E. COX CLAIMS GROUP (USA) LLC<br><br>                    Applicants,<br><br><br>For Order Authorizing Discovery Pursuant to FRCP RULE 27 And/Or For Use In Foreign Proceedings Under 28 U.S.C. § 1782. | Case No. 21-80110<br><br>**EMERGENCY VERIFIED PETITION FOR AN ORDER TO PRESERVE TESTIMONY AND EVIDENCE PURSUANT TO FED. R. CIV. P. 27 AND *EX PARTE* APPLICATION TO OBTAIN ORDER FOR DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782** |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .......................................................................................... 1

II.     STATEMENT OF FACTS ............................................................................. 2

        A.      The Incident ........................................................................................ 2

        B.      Parties and Imminent Foreign Proceedings ...................................... 2

                1.      Vessel Interests ....................................................................... 2

                2.      Slot Charterers ....................................................................... 2

                3.      Interested Underwriters ......................................................... 3

        C.      Blocked Prior Efforts to Obtain Discovery ...................................... 4

        D.      The Slot Charterers' Special Actions in the Central District of California .... 5

        E.      Jurisdiction and Venue ...................................................................... 5

III.    ARGUMENT ................................................................................................. 6

        A.      Interested Underwriters Are Entitled to an Order Pursuant to Rule 27 .... 6

        B.      In the Alternative, Interested Underwriters Are Entitled to an Order Enabling Discovery for Use in a Foreign Proceeding under 28 U.S.C. § 1782. .... 11

                1.      The Application meets the statutory requirements for § 1782 discovery ... 11

                2.      The § 1782 discretionary factors also weigh in favor of granting the Application ... 12

IV.     CONCLUSION .............................................................................................. 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   **INTRODUCTION**

This Petition and Application arises out of the November 30, 2020 container stow collapse on board the vessel ONE APUS ("Vessel"), which occurred while the Vessel was on a voyage from Yantian, China, to Long Beach, California. The incident resulted in loss of or damage to over 1800 cargo containers, with an estimated total value in the tens of millions of dollars. Petitioners and Applicants ROANOKE INSURANCE GROUP, INC. ("ROANOKE"), and W.E. COX CLAIMS GROUP (USA) LLC ("W.E. Cox") (collectively, "Interested Underwriters") are insurers of and/or recovery agents for some of the cargo interests which sustained monetary losses due to the container collapse, and have collectively received, or are expected to receive millions of dollars of claims for damage to cargo from their insureds. Because these losses are potentially frequently subject to a contractual or statutory one-year statute of limitations, litigation over this incident is expected to begin in the very near term in various jurisdictions, including Germany, South Korea, Singapore, New York, and before the London Maritime Arbitrators Association, depending on the forum selection clauses of the relevant charters, bills of lading and contracts of carriage.

After a long stay in Kobe, Japan, for presumptive repairs and cargo operations, the Vessel is now back in the United States, presently at anchorage in San Francisco Bay or berthed at the Port of Oakland, within this Judicial District. The Vessel is expected to remain within the District until around May 26, 2021, before it departs again for Asia. Because the Vessel's short presence within the District is an unique opportunity to obtain indispensable discovery for use in the pending and anticipated cargo litigation, and because the vessel will shortly leave the waters of the United States, Interested Underwriters respectfully seek, on an emergency basis, (1) an Order pursuant to Rule 27 of the Federal Rules of Civil Procedure to preserve testimony and evidence or in the alternative, (2) an Order pursuant to 28 U.S.C. § 1782 to enable discovery for use in foreign proceedings. Without an order authorizing the discovery while the Vessel remains within this District, Interested Underwriters' ability to gather information will be substantially compromised, hampering their ability to recover from liable parties for the subject cargo losses.

1

EMERGENCY VERIFIED PETITION FOR ORDER TO PRESERVE TESTIMONY AND EVIDENCE AND *EX PARTE* APPLICATION TO OBTAIN ORDER FOR DISCOVERY

## II.    STATEMENT OF FACTS

### A.    The Incident

On or around November 30, 2020, the Vessel was in transit from Yantian, China, to Long Beach, California, when it reportedly rolled heavily for unspecified reasons, and lost at least eight hundred forty-three (843) deck containers overboard. Hundreds of other containers collapsed and were damaged on the deck. Declaration of Cynthia Garbrecht in support of the instant Application/Petition ("Garbrecht Dec.") at ¶ 6. After this incident, the Vessel headed to Japan for repairs. *Id*. at ¶ 7. On information and belief, damaged containers were discharged, transloaded, and the cargo re-vanned and re-stowed in Japan for onward carriage to Long Beach. *Ibid*. The full extent of the cargo losses has yet to be determined.

### B.    Parties and Imminent Foreign Proceedings

#### 1.    Vessel Interests

On information and belief, the Vessel is a Japanese-flagged containership bearing IMO Number 9806079. Garbrecht Dec. at ¶ 4. It is 146,694 gross registered tons, with a capacity of carrying over 14,052 twenty-foot containers. *Ibid.* On information and belief, the Vessel is owned by Chidori Ship Holding LLC ("Chidori") and bareboat chartered to Jessica Ship Holdings, S.A., a Panamanian limited liability company ("Jessica"). *Id.* at ¶ 4. The Vessel is time chartered to an NYK Line-affiliate, a Japanese company, and sub-time chartered by Ocean Network Express Ptd. Lte ("ONE"), a Singaporean limited liability company. *Ibid*. NYK Ship Management Pte., Ltd. ("NYK"), a Singaporean company, manages the Vessel. *Id*. at ¶ 4. At all relevant times, as owner pro hac vice and manager, respectively, Jessica and NYK had operational control over the day-to-day management and navigation of the Vessel, and employed the crew. *See Haluapo v. Akashi Kaiun, K.K.*, 748 F.2d 1363, 1364 (9th Cir. 1984); *Walker v. Braus*, 995 F.2d 77, 80–81 (5th Cir. 1993) (vessel owner maintains possession and control of the vessel in time charter setting).

#### 2.    Slot Charterers

On information and belief, ONE had a Vessel Sharing Agreement (a "VSA", otherwise commonly known as a "slot charter" agreement) with three entities: Hapag-Lloyd Aktiengesellschaft ("Hapag-Lloyd"), Hyundai Merchant Marine ("Hyundai") and Yang Ming Marine Transport

EMERGENCY VERIFIED PETITION FOR ORDER TO PRESERVE TESTIMONY AND EVIDENCE AND *EX PARTE* APPLICATION TO OBTAIN ORDER FOR DISCOVERY

Corporation ("Yang Ming"). A VSA is a type of contract enabling these entities to book containerized cargo onto each other's vessels. *See* Request for Judicial Notice in support of instant Application/Petition ("RJN"), and Exhibit JN-3 thereto (Yang Declaration at ¶ 6). Pursuant to the slot charter, Hapag-Lloyd, Hyundai and Yang Ming (collectively, the "Slot Charterers") booked cargo space aboard the ONE APUS. *Id.*, Exhibit JN-3 (Yang Declaration at ¶ 6), Exhibit JN-2 (Kennedy Declaration at ¶ 6). Every shipment booked with the Slot Charterers for the ONE APUS was governed by a separate bill of lading, setting forth different terms and conditions, including as to the proper jurisdiction for any disputes involving the vessel. *See, generally, id.*, Exhibits JN-1, JN-2, JN-3. On information and belief, the Hapag-Lloyd bill of lading has a Hamburg forum selection clause, the Yang Ming bill of lading has a Southern District of New York forum selection clause for shipments to the US, and the Hyundai bill of lading has a Seoul, South Korea, forum selection clause. *Ibid.* On information and belief, the VSA contains an arbitration clause subjecting disputes between or among the parties to the tribunal of the London Maritime Arbitrators Association ("LMAA"). Accordingly, Interested Underwriters expect litigation in multiple fora relating to these losses.

### 3.      Interested Underwriters

ROANOKE insured multiple entities with ownership interests in the cargo aboard the ONE APUS at the time of this casualty. Garbrecht Dec. at ¶ 12 and Exhibit 3 thereto. These insured entities have submitted approximately thirty (30) cargo damage and loss claims to Roanoke as a result of the casualty. *Ibid*. Of these losses, Roanoke has paid $320,000 to date, and approximately twenty-eight (28) claims remain open pending investigation/adjustment. Roanoke's total indemnity exposure for the claims may exceed $3,000,000. *Ibid.*

W.E. Cox is, and at all times relevant hereto has been, acting as recovery agent for AIG, INC. ("AIG"), Nexus Underwriting ("Nexus"), and XL Catlin ("XL Catlin"), including their respective subsidiaries and affiliate entities, with regard to those entities' claims against the owners and/or operators and/or charterers and/or managers of the Vessel. Declaration of John Olson ("Olson Dec.") at ¶ 1. AIG, Nexus and XL Catlin insured multiple parties with ownership or similar interests in containerized cargo aboard the ONE APUS at the time of this casualty, and who sustained monetary

losses as a result. Olson Dec. at ¶ 4. These insurers has received and/or paid multiple claims for relevant cargo losses, and although their aggregate value is presently unknown, it is estimated to exceed approx. $207,622 for AIG; approx. $166,376 for Nexus; and approx. $11,000 for XL Catlin.

As insurers of the lost cargo, Interested Underwriters are and/or will be subrogated to the rights of their insureds against all parties liable for the cargo losses, including but not limited to ONE, NYK, Chidori, Jessica, Hapag-Lloyd, Yang Ming, and Hyundai, and reasonably anticipate filing lawsuits to recover the full extent of their payments to their insureds from such parties. Garbrecht Dec. at ¶ 13; Olson Dec. at ¶ 8. Documents and information from the Vessel and its crew related to the incident, the vessel, the voyage, the stowage of the containers on the deck, and related policies and procedures, and an inspection of the subject areas of the deck where the collapse occurred are therefore key to allow Interested Underwriters to prosecute claims for recovery for these losses and protect their interests.

### C.    Blocked Prior Efforts to Obtain Discovery

The Vessel owners have repeatedly refused requests by Interested Underwriters and, on information and belief, the Slot Charterers, to thoroughly investigate the incident, inspect the Vessel and collect relevant information. Interested Underwriters contacted the Vessel's owners on February 5 and 22, 2021, and again on March 11, 2021, seeking critical documentation relative to the container collapse, or at least confirmation that the documents would be preserved, pending disclosure. Garbrecht Dec. at ¶¶ 9-11 and Exhibits 1&2 thereto. During the more than three (3) months that the Vessel was in Kobe, Japan, Interested Underwriters also requested access for a vessel inspection, to allow their surveyors to investigate the likely cause of the damage and loss. *Ibid*. However, ONE ignored the document requests and summarily denied the inspection, using vague concerns over the COVID-19 pandemic as an excuse. *Ibid.* Of note, the pandemic did not impede ONE from hastily performing repairs on the Vessel, or allowing the Slot Charterers, on information and belief, to perform their own surveys (albeit still unreasonably limited as to time). *See, e.g.*, RJN, Exhibit JN-3 (Yang Declaration at ¶ 14). The denied discovery, lack of transparent Vessel inspections before any repairs were performed, and the circumstances of the vessel owners'

handling of the reasonable investigation requests for the largest container collapse incident in maritime history raise legitimate spoliation of evidence concerns.

### D.   The Slot Charterers' Special Actions in the Central District of California

In March 2021, the Vessel left Japan and travelled to the Port of Long Beach for scheduled cargo operations. At that time, the Slot Charterers initiated special actions for emergency discovery (similar to the instant request) in the Central District of California, while the Vessel was at the port. *See*, generally, RJN, Exhibits JN-1, JN-2, JN-3. These actions, which raised evidence preservation interests akin to those of Interested Underwriters here due to the difficulties in investigating the circumstances of the loss, resulted in an informal discovery agreement between ONE and the Slot Charterers. Those proceedings are now formally concluded. *See* RJN, Exhibit JN-4. As is set forth below, Roanoke did not even know about the proceedings until the Vessel had all but hauled anchor, and though WE Cox did learn of the proceedings while they were pending, neither of Interested Underwriters got the benefit of whatever discovery agreement was reached, or whatever documents and information were produced.

### E.   Jurisdiction and Venue

The Vessel left Long Beach on or around April 17, 2021 and is currently idle at temporary anchorage in San Francisco Bay. Garbrecht Dec. at ¶ 14. While the ship's schedule is subject to change, it is expected to shift on May 6th to Oakland Berth 55. *Ibid.*

Once the Vessel and crew leave Oakland, Interested Underwriters will likely be deprived of this practical and reasonable opportunity to take crew depositions, inspect the Vessel, and obtain evidence necessary to protect their interests and those of their insureds for the subject cargo losses in the anticipated proceedings in Singapore, South Korea, New York and Germany. The Vessel is not scheduled to return to the United States until August 2021, completing instead multiple voyages in Asia and South America. RJN, Exhibit JN-5.

Even if the crew members who were aboard the ship at the time of the casualty have left the Vessel by now, Interested Underwriters will still need to depose some of the current crew members for relevant information which may provide insights into the owners' procedures, and the handling of the post-casualty investigation process, including as to evidence preservation. Interested Under-

writers also need to have a marine surveyor and potentially other experts knowledgeable regarding marine electronic equipment attend on board the Vessel to inspect the cargo loading software and the areas involved in the container collapse, including the location and nature of the repairs performed, all of which are relevant to confirm the facts and circumstances of the incident and identify its cause. Exhibits A through F, appended hereto; *see also* Fed. R. Civ. P. 34(a) (permitting entry onto a party's property to inspect and copy documents and electronically stored information). Interested Underwriters, assuming the cooperation of the vessel interests, commit to obtain all of this discovery swiftly and without any impact upon the Vessel's cargo operations.

## III.   ARGUMENT

### A.   Interested Underwriters Are Entitled to an Order Pursuant to Rule 27

Rule 27 of the Federal Rules of Civil Procedure[1] provides a mechanism to preserve testimony for use in an action or proceeding not presently pending but expected to be filed in the future. *See Ash v. Cort*, 512 F.2d 909, 911 (3d Cir.1975). The Rule states, "A person who desires to perpetuate testimony regarding any matter that may be cognizable in any court of the United States may file a verified petition in the United States district court in the district of the residence of any expected adverse party." Fed. R. Civ. P. 27. The Rule is intended to provide aid for the eventual adjudication of the future suit by affording "a simple ancillary or auxiliary remedy" to obtain discovery, via a special proceeding to which "the usual federal jurisdictional and venue requirements do not apply." *Messeller v. United States*, 158 F.2d 380, 382 (2d Cir.1946).

To be successful, a Rule 27 petitioner must demonstrate (1) that it expects to be a party to an action that may be cognizable in any court of the United States but the action is unable to be brought presently; (2) the subject matter of the expected action and the petitioner's interest in such an action; (3) facts which the petitioner seeks to establish through the proposed testimony and the reasons for desiring to perpetuate that testimony at this time; (4) the names or description of the expected adverse parties; and (5) the names and addresses of the witnesses to be examined and the substance

---

[1] All "Rule" references hereafter mean the Federal Rules of Civil Procedure.

6

EMERGENCY VERIFIED PETITION FOR ORDER TO PRESERVE TESTIMONY AND EVIDENCE AND *EX PARTE* APPLICATION TO OBTAIN ORDER FOR DISCOVERY

of the testimony petitioner expects to obtain from them. Fed. R. Civ. P. 27(a)(1); *Petition of Campania Chilena de Navegacion*, 2004 WL 1084243 (E.D.N.Y. Feb. 6, 2004).

A proceeding to perpetuate does not require an independent basis of federal jurisdiction, but it must be shown that the contemplated action for which the testimony is being perpetuated would be subject to federal jurisdiction. *Dresser Indus. v. United States*, 596 F.2d 1231, 1238 (5th Cir.1979). Proceedings to perpetuate have been recognized as "cognizable" admiralty cases, which are generally subject to federal maritime law. *See, e.g.*, *In the Matter of the Application of DEIULEMAR COMPAGNIA DI NAVIGAZIONE S.p.A. for the Perpetuation of Certain Evidence v. M/V Alegra*, 198 F.3d, 473, 479 (4th Cir. 1999) (Rule 27 discovery in aid of charterers' potential arbitration with shipowner where (as here) vessel was about to leave U.S. port), *Petition of Raffles Shipping Int'l Pte Ltd.*, 2010 WL 819820 (E.D. La. Mar. 4, 2010) (Rule 27 discovery in aid of charterers' potential arbitration with shipowner ordered where vessel was about to leave U.S. port); *Campania Chilena de Navegacion*, 2004 WL 1084243 (Rule 27 discovery in aid of charterers' defense of potential claims by cargo interests as a result of fire where vessel was about to leave U.S. port); *Phibro Commodities v. M.V. Rizcun Trader*, 1997 WL 583206 (E.D. Pa. Mar. 26, 1997) (Rule 27 discovery in aid of cargo interests' action for damages in other fora, as well as security where vessel was about to leave U.S. port); *In re Deiulemar Di Navigazione S.p.A*, 153 F.R.D. 592, 1004 A.M.C. 2250 (E.D. La. 1994) (Rule 27 discovery in aid of charterer's indemnification claim in arbitration where vessel was about to leave U.S. port); *Ferro Union Corp. v. S.S. Ionic Coast*, 43 F.R.D. 11, 14 (S.D. Tex. 1967) (allowing depositions, inspection of the vessel and its cargo, and production of requested documents because "[t]o deny discovery here could well mean that the information sought would never be available..."); *Koch Fuel Int'l v. M/V SouthStar*, 118 F.R.D. 318, 320 (E.D.N.Y. 1987) ("[o]ne of the 'exceptional circumstances' in which discovery has been deemed proper is where a vessel with crew members possessing particular knowledge of the dispute is about to leave port").

In circumstances where a vessel was expected to leave the court's jurisdiction or similar emergencies, courts have granted similar petitions without strict adherence to the twenty-day notice provision of Rule 27. *See In re Deiulemar Di Navigazione S.p.A*, 153 F.R.D. at 593; *In re Petition of Chao*, 2008 WL 4471802 (N.D. Iowa Oct. 2, 2008) (allowing two-days' notice). Strict compliance

1   with Rule 27's notice provision has not been required in such circumstances. *See In re Deiulemar Di*

2   *Navigazione*, supra, 153 F.R.D. at 593.

3         Here, Interested Underwriters have satisfied all the requirements of Rule 27.

4         First, Interested Underwriters expect to be parties to anticipated cargo litigation over the

5   subject container losses, which is expected to occur in multiple fora, including the United States,

6   depending on the applicable maritime contracts and bills of lading (*e.g.*, Yang Ming bill of lading –

7   exclusive jurisdiction in the Southern District of New York, U.S.A.; ONE bill of Lading –

8   Singapore; Hyundai bill of lading – South Korea; Hapag-Lloyd – Hamburg, Germany; LMAA under

9   the VSA; etc.). Fed. R. Civ. P. 27(a)(1)(A); *see* RJN and Exhibits JN-1, JN-2, JN-3 thereto. Rule 27

10  has been read as authorizing pre-lawsuit discovery orders even in cases where the "cognizable"

11  litigation is expected to take place in a state court, foreign court, or arbitration proceeding. Rutter

12  Group Prac. Guide Fed. Civ. Proc. Before Trial (Nat Ed.) Ch. 11(IV)-A; *see Application of*

13  *Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra, supra*, 198 F.3d at 479.

14        Second, the subject matter of these expected actions and Underwriters' interests (Fed. R. Civ.

15  P. 27(a)(1)(B) are set forth in the supporting Declarations on behalf of Interested Underwriters. *See*

16  Garbrecht Dec. at ¶ 13; Olson Dec. at ¶ 8. In essence, Interested Underwriters are the insurers of

17  cargo interests whose cargo was lost or damaged aboard the ONE APUS, and have received and

18  have paid or will soon pay multiple claims for these losses. Garbrecht Dec. at ¶¶ 12-13; Olson Dec.

19  at ¶¶ 4-8. Interested Underwriters anticipate seeking indemnity against all liable parties (to include

20  the vessel owners and involved Slot Charterers) for any damages paid to their insureds as a result of

21  these claims. Interested Underwriters are unable to commence or otherwise participate in those suits

22  now as the adjustment process is still underway. That these future actions are contingent on the

23  outcome of the claims process is enough to satisfy the requirements of Rule 27, which does not

24  require petitioners to show that "cognizable" action is an "absolute certainty." *See Penn Mut. Life*

25  *Ins. Co. v. United States*, 68 F.3d 1371, 1374 (D.C. Cir. 1995).

26        Third, the requested discovery seeks the preservation of information concerning the cause

27  and circumstances of the container collapse, which will be the basis of the claims against Interested

28  Underwriters, as well as the ultimate inquiry in all the contemplated litigation over the

8

1    November 30, 2020 incident. Fed. R. Civ. P. 27(a)(1)(C). As shown by the subpoenas submitted

2    herewith as Exhibits A-F for deposition testimony and inspection of the ONE APUS, the proposed

3    discovery seeks basic information normally collected in similar cases, which is essentially the same

4    as the requests Interested Underwriters sent to the Vessel owners in February and early March of this

5    year (which ONE was quick to reject). Garbrecht Dec. at ¶¶ 9-11 and Exhibits 1&2 thereto. The

6    items and areas of testimony and interest are all standard and necessary equipment and information

7    found on vessels like the ONE APUS. Once the Vessel is out of this Court's jurisdiction, its officers

8    and information may never be locatable again, as the Vessel is not expected to return to the United

9    States until August 2021, most likely with a different crew, after multiple voyages in Asia and

10   Europe. RJN, Exhibit JN-5.

11          Fourth, and as previously noted, Interested Underwriters anticipate filing suit against the

12   various entities potentially liable for petitioners' cargo losses: the Vessel's owners, owners pro hac

13   vice, charterers, operators, and managers, and the Slot Charterers involved in booking insured cargo

14   onto the Vessel's deck for the subject voyage. The following information is known about these

15   entities:

16       (a) ONE, which is present within this District by virtue of the vessel ONE APUS's presence

17           here, is also expected to be a Defendant in Interested Underwriters' anticipated subroga-

18           tion actions relative to the incident. ONE lists its main address on its website as 7 Straits

19           View, #16-01 Marina One East Tower, Singapore 018936. ONE was represented by

20           California attorney Alan Nakazawa of Collier Walsh Nakazawa LLP, One World Trade

21           Center, Suite 1860, Long Beach, CA 90831 in the Slot Charterers' special actions in the

22           Central District of California.

23       (b) Yang Ming is also expected to be a Defendant in Interested Underwriters' anticipated

24           subrogation actions relative to the incident. Yang Ming was represented by Galin G. Luk

25           and Thomas M. Fedeli of COX WOOTTON LERNER, GRIFFIN & HANSEN LLP,

26           900 Front Street, Suite 350, San Francisco, CA 94111 in the Slot Charterers' special

27           actions in the Central District of California.

28

(c) Hyundai is also expected to be a Defendant in Interested Underwriters' anticipated subrogation actions relative to the incident. In the Slot Charterers' special actions in the Central District of California, Hyundai was represented by John D. Giffin and Connor M. Trafton of KEESAL, YOUNG & LOGAN, 450 Pacific Avenue, San Francisco, CA 94133.

(d) Hapag-Lloyd is also expected to be a Defendant in Interested Underwriters' anticipated subrogation actions relative to the incident. In the Slot Charterers' special actions in the Central District of California, Hapag Lloyd was represented by Philip Lempriere of Schwabe, Williamson & Wyatt, P.C., 1420 5th Avenue, Suite 3400, Seattle, WA 98101.

Fifth, Interested Underwriters seek to depose the Vessel's Master, Chief Mate and Chief Engineer, as well as custodians of Records for Jessica and Chidori. *See* Exhibits A through F, attached hereto. These officers are reasonably expected to testify, *inter alia*, as to the circumstances immediately prior to the container collapse, the location of the affected area on the deck, the post-incident investigation as to the cause, any immediate remedial actions, the condition of the Vessel/area before the incident, and policies and procedures regarding deck container stowage and vessel loading. Even if the officers currently aboard the Vessel were not serving at the time of the collapse, as the highest ranking deck and engineering officers aboard, they are the best witnesses presently available within this District to testify about the information, documents and things sought to be preserved, and are expected to have relevant knowledge of ONE's policies and procedures surrounding the loading and stowage of deck containers, and any recent changes thereto, all of which are within the permissible scope of discovery in accordance with Rule 26(b)(1).

Finally, it should be noted that ONE has already allowed the Slot Charterers more access to the Vessel and information about this loss than Interested Underwriters have had, not only because ONE allowed some of them to inspect the Vessel in Japan, albeit briefly, but presumably also by virtue of the discovery agreement with ONE entered into at the conclusion of the Central District special actions. *See* RJN, Exhibit JN-4.

**B.     In the Alternative, Interested Underwriters Are Entitled to an Order Enabling Discovery for Use in a Foreign Proceeding under 28 U.S.C. § 1782.**

In the alternative, Interested Underwriters seek discovery pursuant to the provisions of 28 U.S.C. § 1782 for use in the anticipated foreign litigation proceedings against the Vessel ownership interests and Slot Charterers in Singapore, South Korea and Germany, per the applicable bills of lading. Three elements must be satisfied before 28 USC § 1782 may be invoked: (a) the person from whom discovery is sought resides, or can be found, in the district where the application is made, (b) the discovery is for use in a proceeding before a foreign tribunal, and (c) the application is made by a foreign or international tribunal or "any interested person." *In re Dubey*, 949 F.Supp.2d 990, 992 (C.D. Cal. 2013); *see also* 28 U.S.C. § 1782(a). In addition to the statutory requirements, discretionary factors must also weigh in favor of granting the application. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 263 (2004); *see Ex Parte Application of Qualcomm Inc.*, 162 F.Supp.3d 1029, 1035 (N.D. Cal. 2016).

**1.     The Application meets the statutory requirements for § 1782 discovery**

Interested Underwriters are undoubtedly "interested persons" under the meaning of § 1782 in the anticipated foreign proceedings to recover in connection with the subject cargo losses. The U.S. Supreme Court has acknowledged that the term "interested person" should be interpreted broadly, and includes both litigants and other parties who possess a reasonable interest in obtaining judicial assistance. *Intel*, *supra*, 542 U.S. at 256–57. Although they are not parties to the relevant maritime contracts and bills of lading, Interested Underwriters are and/or will become subrogated to the rights of their insureds who have liability claims against ONE and the Slot Charterers for the loss of or damage to their cargo on the ONE APUS. Thus, under the circumstances, Interested Underwriters are indisputably an "interested person" within the meaning of § 1782.

The requested discovery is intended for use in a proceeding in a foreign or international tribunal. The foreign proceeding for which a court may authorize discovery need not be "pending or imminent," but simply "within reasonable contemplation." *Intel*, *supra*, 542 U.S. at 259. Although "[t]he future proceedings must be more than speculative," it suffices that the district court has sufficient indication that a foreign proceeding "would eventuate in which the evidence gathered can

be weighed impartially." *See In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA) Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014). Here, the anticipated recovery actions in Singapore, South Korea and Germany on behalf of Interested Underwriters meet these criteria.

Lastly, the Vessel (and hence the documents and evidence onboard) is currently in San Francisco Bay. Therefore, the persons from whom the discovery is sought are and will be found within this district.

**2.   The § 1782 discretionary factors also weigh in favor of granting the Application**

To determine whether discovery should be permitted, the Court should consider the following non-exhaustive factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature and character of the foreign proceeding, and whether the foreign court is receptive to judicial assistance from the United States; (3) whether the discovery request is an attempt to avoid foreign evidence-gathering restrictions; and (4) whether the discovery request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–66. "The district court [is] not required to address explicitly every factor or argument, nor [is] it required to issue a written order." *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015) (citing *United States v. Sealed 1*, 235 F.3d 1200, 1206 (9th Cir. 2000) (noting the broad discretion afforded the district courts under § 1782 and the lack of specific guidance with which to exercise that discretion)).

Starting with the first factor, the need for § 1782 assistance is of particular importance when the entity from whom discovery is sought is a non-party in the underlying foreign proceeding: "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Here, the Vessel and its registered owners/owners pro hac vice may not be parties to Interested Underwriters' suits outside of Singapore, due to the Singapore forum selection clause in ONE's standard bill of lading and potential lack of personal jurisdiction: the Vessel is Japanese-flagged, its registered owner is Japanese, its bareboat charterer is Panamanian, its manager is a Singaporean company, and the crew is likely to include individuals of multiple different

12

jurisdictions. As such, the anticipated tribunals of Germany, South Korea, etc. pursuant to the Slot Charterers' bills of lading would not be able to compel the Vessel or its owners, managers, and crew to produce the requested documents or testimony in connection with the cargo damage claims. Absent an order from this Court permitting the requested document, deposition and inspection subpoenas, Interested Underwriters may therefore lose their sole opportunity to procure critical evidence for use in the foreign litigation proceedings.

The second factor takes into account the "nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign court to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "When evaluating whether foreign tribunals would accept U.S. assistance, courts look for authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Siemens AG v. W. Digital Corp.*, No. 8:13-CV-01407-CAS, 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013). The burden of demonstrating that the foreign tribunal would be unre-ceptive to the evidence rests with the party opposing the application. *See In re Bayer AG*, 146 F.3d 188, 196 (1998); *see also In re Owl Shipping, LLC*, No. CIV.A. 14-5655 AET, 2014 WL 5320192, at *2 (D.N.J. Oct. 17, 2014). Here, there is no allegation and certainly no "authoritative proof" that the courts of South Korea or Germany would reject the evidence Interested Underwriters seek.

Under the third discretionary factor, the Court needs to weigh if the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Courts concentrate on the apparent motivation for the request and not on foreign discovery rules that parties seldom have on hand. *E.g.*, *In re: Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016). Section 1782 does not contain a requirement that the information sought be discoverable under the law governing the foreign proceeding. *Mak v. For the Issuance of Discovery in ex rel. Foreign Proceeding Pursuant to 28 U.S.C. 1782*, 2012 WL 2906761 (N.D. Cal. July 16, 2012). Interested Underwriters are not in any way attempting to violate proof-gathering principles and rules in any of the multiple jurisdictions where their contemplated recovery actions would be brought; to the contrary, they seek the requested discovery on an emergency basis to prevent the further loss of evidence that will result if the Vessel and its crew are allowed to depart this Court's

jurisdiction before an inspection is performed and documents and depositions are obtained. Further, under the afore-cited authority, even if Interested Underwriters obtain more evidence than would be ordered in any of the contemplated foreign proceedings, § 1782 discovery would still be warranted.

The final *Intel* factor contemplates whether the discovery is "unduly intrusive or burden-some." *Intel*, 542 U.S. at 265. In assessing this factor, district courts apply the standards of Rule 26. Fed. R. Civ. P. 26(b)(1); *see, e.g., MetaLab Design Ltd. v. Zozi Int'l, Inc.*, No. 17-MC-80153-MEJ, 2018 WL 368766, at *4 (N.D. Cal. Jan. 11, 2018) (concluding that the petitioner's discovery request was overbroad under the standards of Fed. R. Civ. P. 26(b)(1)); *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) ("[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."). Under Rule 26, "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality depends, in part, on "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Moreover, "the court should be particularly wary of denying [§ 1782] discovery on relevance grounds." *See In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in Actions Pending in the Norway,* 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (finding it "inappropriate" to deny a § 1782 applica-tion on relevance grounds "[g]iven the broadly permissive standard by which a court evaluates the relevance of discoverable material, and the parties' presentation of a factual dispute regarding the relevance of the discovery sought."). As previously noted, the proposed subpoenas set forth a limited number of documents maintained in the normal course of business and are directly relevant to the anticipated cargo claims against the Vessel owners and Slot Charterers. The requested depositions of only a few key, high-ranking Vessel officers are similarly limited in scope, and will streamline Interested Underwriters' investigation, by narrowing down the types of available evidence for inspection and copying. If the crew members are not deposed promptly while the Vessel remains in the Court's jurisdiction, they are likely to leave the ship and forever be unavailable to offer indispen-sable witness testimony relating to the incident. The Vessel inspection will allow identification and

preservation of key evidence from the ship before her owners attempt further repairs of the affected areas, possibly further destroying relevant evidence. To minimize any disruption to cargo operations while the Vessel is in port, Interested Underwriters plan to immediately provide this Court's order and the subpoenas to the attorneys for the Vessel owner, so depositions can be taken while the ship is sitting idle.

Accordingly, all *Intel* factors weigh in favor of granting this § 1782 application.

## IV.    <u>CONCLUSION</u>

Once the ONE APUS departs this Court's jurisdiction, it will not return to the U.S. for several months. When it does, it is fair to expect that it will be staffed by a different crew lacking intimate knowledge of the events of the subject container collapse, who may have been operating under different company rules and procedures than were in effect when the casualty occurred. Under the circumstances, this may be Interested Underwriters' only opportunity to collect the evidence needed to protect their rights in the anticipated cargo claim suits in South Korea, Singapore, Germany and the Southern District of New York. Interested Underwriters are only advancing reasonably limited requests for testimony of key officers, collection of key documents and information that are standard for incidents involving containerships like the ONE APUS, and an expert inspection of relevant areas to assess the cause of loss. Whether under Fed. R. Civ. P. Rule 27 or 28 U.S.C. § 1782, Interested Underwriters respectfully request that this Court grant the proposed discovery on an emergency basis, to enable Interested Underwriters to obtain it in the short few days that the Vessel remains in its jurisdiction.

DATED:    May 3, 2021                                    KENNEDYS CMK LLP


                                             By:   /s/ *Jonathan W. Thames*
                                                   JONATHAN W. THAMES
                                                   FORREST BOOTH
                                                   ANNA GOURGIOTOPOULOU
                                                   Attorneys for
                                                   ROANOKE INSURANCE GROUP, INC.;
                                                   W.E. COX CLAIMS GROUP (USA) LLC

1

**ATTORNEY VERIFICATION**

2        I, Jonathan W. Thames, hereby declare as follows:

3        1.        I am the attorney for the Applicants/Petitioners and I am authorized to make this

4   Verification on their behalf.

5        2.        I have read the foregoing Application/Petition and the contents thereof are true and

6   accurate to the best of my knowledge, information and belief.

7        3.        The reason that this Verification was made by me and not the Applicants/Petitioners

8   is that the both of them are legal entities, and none of them have officers present in this District.

9        4.        The source of my knowledge is information and records furnished to me by the

10   Applicants/Petitioners and their respective representatives, all of which I believe to be true and

11   accurate.

12        I declare under penalty of perjury under the laws of the Unites States of America and the

13   State of California that the foregoing statements are true and correct.

14        Executed in San Francisco, California this 3rd day of May, 2021.

15

16

17   _____

18   Jonathan W. Thames

19

20

21

22

23

24

25

26

27

28

EMERGENCY VERIFIED PETITION FOR ORDER TO PRESERVE TESTIMONY AND EVIDENCE AND *EX PARTE* APPLICATION TO OBTAIN ORDER FOR DISCOVERY